| | |
|---|---|
| | |

<br>

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STURDY GUN SAFE, INC., <br><br> Plaintiff, <br><br> v. <br><br> RHINO METALS, INC., <br><br> Defendant. | No. 1:18-cv-01452-DAD-BAM <br><br> ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER <br><br> (Doc. No. 9) |

This matter came before the court on defendant's motion to dismiss or transfer. (Doc. No. 9.) A hearing on the motion was held on December 18, 2018. Attorneys D. Greg Durbin and Shane Smith appeared on behalf of plaintiff, and attorney Teague Donahey appeared on behalf of defendant. Having considered the parties' briefs and the arguments of counsel, and for the reasons set forth below, the court will grant defendant's motion to transfer.

## BACKGROUND

In this action, plaintiff Sturdy Gun Safe, Inc. ("SGS") seeks a declaratory judgment of trade dress and design patent non-infringement. (Doc. No. 2.) SGS alleges that it is a family-owned business founded in 1959 that designs, manufactures, and sells gun safes. (*Id.* at ¶ 7.) SGS is incorporated under the laws of the State of California with its principal place of business in Fresno, California. (*Id.* at ¶ 1.) In the 1980s, SGS began nationwide sales. (*Id.*)

/////

On information and belief, SGS alleges that defendant Rhino Metals, Inc. ("Rhino") is incorporated under the laws of the State of Idaho with its principal place of business located in Idaho. (*Id.* at ¶ 2.) On information and belief, plaintiff alleges that Rhino began designing, manufacturing, and selling gun safes in approximately 1995. (*Id.*)

On September 11, 2018, counsel for Rhino sent a letter to SGS alleging that SGS had infringed Rhino's trade dress and design patents. (*Id.* at ¶ 10 & Ex. A.) Rhino demanded that SGS immediately cease and desist from any further activities related to gun safes that allegedly infringe on Rhino's trade dress[1] or design patents. (*Id.* at ¶ 12.) Rhino's counsel stated that if SGS did not accede to this demand they would pursue their client's claims in federal court. (*Id.*)

On September 14, 2018, Texas attorney Bennet Langlotz emailed counsel for Rhino, stating, "I have your letter of 9-11-2018 and have been asked to represent Sturdy Gun Safe Inc. in this matter. We will be reviewing the matter in the weeks ahead." (Doc. No. 9-5.) A few days later, counsel for both parties spoke by telephone, at which time SGS's Texas-based counsel stated that SGS would prefer to resolve the dispute through settlement rather than litigation. (Doc. No. 9-1 at 7.) The parties thus began to discuss possible terms of settlement over the next few weeks and through early October. (*See* Doc. Nos. 9-6, 9-7.) On October 4, 2018, counsel for Rhino sent an email to SGS's Texas-based counsel, stating that "it appears that the parties may be at an impasse," but nonetheless made a settlement offer "in the interest of making one final attempt at resolving the matter." (Doc. No. 9-7.)

On October 17, 2018, Tennessee attorney Stephen Zralek emailed counsel for Rhino stating that his firm was in the process of being formally engaged by SGS in the matter. (Doc. No. 9-8.) SGS's new Tennessee-based counsel indicated that he understood Rhino had been in communications with Texas attorney Langlotz, but requested that Rhino's counsel direct all future communications to him and his legal assistant. (*Id.*) SGS's Tennessee-based counsel Zralek also stated, "If you give me a few days, I'll be in touch." (*Id.*) Two days later, on October

---

[1] Rhino claims that its "Ironworks" gun safes are "manufactured with a distinctive antique look and feel, including distressed metal surfaces designed to accentuate the natural grain of the steel, as well as decorate metal plates and rivets." (Doc. No. 9-1 at 6–7.)

19, 2018, Attorney Zralek filed the present action on behalf of SGS seeking declaratory judgment of non-infringement. (Doc. 9-1 at 8.)

On October 26, 2018, Rhino filed an action against SGS in the United States District Court for the District of Idaho (hereinafter "Idaho Action"), asserting federal and common law trade dress infringement/unfair competition, and dilution under Idaho Code § 48-513. (Doc. No. 9-4.)

On November 8, 2018, present counsel substituted in on behalf of SGS in this action. On November 13, 2018, Rhino filed the present motion in this court to dismiss or transfer SGS's declaratory judgment action. (Doc. No. 9.) Meanwhile, in the Idaho Action, SGS moved for an extension of time in which to respond to Rhino's complaint on the grounds that additional time would permit this court to resolve Rhino's pending motion to dismiss or transfer. The District Court for the District of Idaho construed the motion as a request for a stay and stayed the Idaho Action until January 8, 2019.[2] (Doc. No. 12-2.)

SGS filed an opposition to the present motion to dismiss or transfer on December 4, 2018. (Doc. No. 12.) Rhino filed its reply on December 10, 2018. (Doc. No. 13.)

**DISCUSSION**

In the pending motion, Rhino argues that: (1) this action should be dismissed without prejudice because the court lacks personal jurisdiction over Rhino; (2) this action should be dismissed or transferred pursuant to the anticipatory suit rule; and (3) this action should be transferred to the District of Idaho under the discretion afforded the court by 28 U.S.C. § 1404(a). (Doc. No. 9-1.)

**A.    Motion to Dismiss for Lack of Personal Jurisdiction**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may seek dismissal of an action for lack of personal jurisdiction. In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the burden of proof to show that jurisdiction is

---

[2] On January 10, 2019, the U.S. District Court for the District of Idaho issued an order continuing the stay in that matter until a ruling is issued by this court on the pending motion to dismiss or transfer. (*See* Order, *Rhino Metals, Inc. v. Sturdy Gun Safe, Inc.*, No. 1:18-cv-00474-EJL (D. Idaho Jan. 10, 2019), Doc. No. 17.)

3

appropriate lies with the plaintiff. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). When a defendant's motion to dismiss is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists in order for the action to proceed. *See Picot*, 870 F.3d at 1211; *Love*, 611 F.3d at 608; *Boschetto*, 539 F.3d at 1015.

In determining whether plaintiff has met its burden of showing personal jurisdiction, the court accepts plaintiff's allegations as true, and any conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Love*, 611 F.3d at 608; *Boschetto*, 539 F.3d at 1015; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, plaintiff "cannot simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (same). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Core-Vent Corp.*, 11 F.3d at 1484; *see also* Cal. Civ. P. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Love*, 611 F.3d at 608–09. Thus, only constitutional principles constrain the jurisdiction of a federal court in California. *Love*, 611 F.3d at 608–09; *Boschetto*, 539 F.3d at 1015; *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal jurisdiction over nonresident defendants only so long as there exist sufficient "minimum contacts" between the defendant and the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th

Cir. 2003). Maintenance of the suit must "not offend traditional notions of fair play and substantial justice." *Yahoo!*, 433 F.3d at 1205 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Generally, there are two different types of personal jurisdiction which meet this due process standard: general jurisdiction and specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985); *Picot*, 780 F.3d at 1211. Here, the parties dispute only the issue of specific jurisdiction.[3] In determining whether a court has specific jurisdiction over a non-resident defendant, the following three-prong test is to be employed:

> (1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of* or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

*Picot*, 780 F.3d at 1211 (citing *Fred Martin Motor Co.*, 374 F.3d at 802) (emphasis added); *see also Williams*, 2017 WL 1101095, at *5. Plaintiff has the burden of establishing the first two of these prongs, and a "strong showing on one axis will permit a lesser showing on the other." *Yahoo!*, 433 F.3d at 1210; *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). If plaintiff meets this burden, the burden shifts to defendant on the third prong to show that the exercise of jurisdiction would not be reasonable. *CollegeSource, Inc.*, 653 F.3d at 1076; *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

If plaintiff seeks to invoke specific personal jurisdiction, it must establish jurisdiction for "each claim asserted against a defendant." *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal

---

[3] In its opposition to the pending motion to dismiss or transfer, SGS contends that "[b]ecause the facts present a compelling case for specific personal jurisdiction over Rhino in this Court, Sturdy Safe does not advance an argument for general jurisdiction in order to conserve Court and party resources." (Doc. No. 12 at 7 n.1.)

5

jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.*

### 1. Personal Jurisdiction for Trade Dress Non-infringement

Rhino argues that the court lacks personal jurisdiction over it with respect to SGS's trade dress non-infringement cause of action. (Doc. No. 9-1 at 9–11.) In opposition, SGS argues that Rhino purposefully markets and sells products bearing the asserted trade dress in California, and that Rhino cannot make a compelling case that the court's exercise of personal jurisdiction would be unreasonable. (Doc. No. 12 at 12–17.)

#### a. *Purposeful Direction*

The analysis under the first prong of the *Burger King* three-step inquiry differs depending on whether the action involves allegations of tortious conduct or contract obligations. *See Ziegler v. Indian River Country*, 64 F.3d 470, 473 (9th Cir. 1995); *Sinatra*, 854 F.2d at 1195. While a purposeful availment analysis is typically applied in suits sounding in contract, a purposeful direction analysis is typically applied in suits sounding in tort. *See Fred Martin Motor Co.*, 374 F.3d at 802. Because this action for declaratory relief regarding trade dress infringement sounds more in tort than in contract, the court will apply the purposeful direction analysis. *See Brown v. McCain*, 612 F. Supp. 2d 1118, 1123 (C.D. Cal. 2009) ("Courts often characterize violations of the Copyright Act, Lanham Act, and common law right of publicity as torts, particularly when analyzing personal jurisdiction.").

For the "purposeful direction" test, this court looks to the three-part "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *Fred Martin Motor Co.*, 374 F.3d at 803. This test asks whether the defendant is alleged to have (1) committed an intentional act that (2) was expressly aimed at the forum state and (3) caused harm the defendant knew was likely to be suffered in the forum state. *Id.* (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). An action taken outside the forum state with foreseeable effects within the forum state does not *per se* give rise to specific personal jurisdiction, and "'something more' than mere foreseeability" is required. *Id.* at 804–05 (quoting *Bancroft & Masters*, 223 F.3d 1082 at 1087). "'[S]omething more' means conduct expressly aimed at the form." *Brayton Purcell LLP*

6

*v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006)).

SGS contends that Rhino meets this test because sworn statements from Rhino's Chief Executive Officer filed in a prior action in the District of Idaho[4] explain that "Rhino engages in various marketing and sales efforts across the United States, including in California," that these efforts "are concentrated in the Southern California markets," that the sales efforts are comprised of "brief and infrequent visits by sales staff to Rhino dealers in Southern California," and that "Rhino sells safes through 21 dealers in California." (Doc. No. 12-3 at ¶¶ 6–7.) SGS contends that Rhino also sells directly to Californians through its "highly commercial and interactive website," Rhinosafe.com, as well as through third parties such as Costco and Amazon. (Doc. No. 12 at 13–14.)

Rhino does not deny these marketing and sales activities, but argues that even if the court were to find that these activities constitute intentional acts directed at the forum state, they would still fall short of satisfying the third prong of the *Calder* effects test, because these activities did not cause harm in the forum state. (Doc. No. 13 at 7–8.) Rhino's point in this regard is well-taken. This action does not allege any tortious conduct on the part of Rhino. Rather, the present dispute results from the alleged tortious conduct of SGS. Moreover, SGS does not even address the "causing harm" prong of the effects test. The court therefore concludes that the third element of the *Calder* effects test is not satisfied by the sale of Rhino's products in California. *See Arkon Res., Inc. v. Nat'l Prods. Inc.*, No. CV 17-2976 PSG (PLAx), 2018 WL 1143816, at *3 (C.D. Cal. Jan. 3, 2018) (holding in a declaratory action for non-infringement that plaintiff could not plausibly assert harm sufficient to satisfy the third requirement of the *Calder* effects test "because there is nothing improper about [defendant's] products being sold in California").

b. *Arising Out of or Relating to*

Even if Rhino's marketing and sales activities satisfied the purposeful direction requirement, Rhino argues that this action would nonetheless fail to satisfy the second element of

---

[4] Declaration of Don Suggs, *Rhino Metals, Inc. v. Kodiak Safe Company, LLC*, No. 1:16-cv-00285-EJL-REB (D. Idaho Aug. 22, 2016), Doc. No. 15-1.

7

the specific jurisdiction analysis, which requires that the plaintiff's claims arise out of the defendant's forum-related activities. In the Ninth Circuit, a plaintiff's claims "arise out of" the defendant's alleged contacts if but for defendant's alleged contacts, plaintiff's cause of action would not have arisen. *See Ziegler*, 64 F.3d at 474; *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

Here, SGS seeks a declaratory judgment regarding whether SGS's products infringe on Rhino's trade dress. Rhino argues that its marketing and sales activities are not the "but for" cause of SGS's trade dress non-infringement claim, because "[e]ven if Rhino had never marketed or sold a product in California and had limited its marketing and sales activities to other states, Rhino still would have a viable Lanham Act claim for trade dress infringement against SGS." (Doc. No. 13 at 8.)

Notably, SGS fails to address this element at all in its opposition to the pending motion. Absent a showing that SGS's claims in this action arise out of Rhino's marketing and sales activities in California, the court concludes that the second element of the specific jurisdiction analysis has not been met. *See Arkon*, 2018 WL 1143816, at *4 ("Because sales of NPI's products in California are unrelated to whether its trade dress registration is valid and whether Arkon infringes upon NPI's trade dress, Arkon's claims do not arise out of NPI's conduct in California.").

### c. *Reasonableness*

Having failed to satisfy the first two elements of the specific jurisdiction analysis, SGS fails to establish that Rhino is subject to personal jurisdiction in California for the trade dress non-infringement claim.[5] Accordingly, the court need not address reasonableness.

---

[5] Although not advanced in their opposition to the pending motion, counsel for SGS argued at the hearing on the motion that the basis for specific jurisdiction over the trade dress non-infringement claim may be premised solely on the cease and desist letter sent by Rhino, and that this letter constitutes an intentional act directed at the forum state, which causes harm to SGS because it aims to prevent SGS from producing its product. Consideration of Rhino's cease and desist letter, however, does not alter the court's specific jurisdiction analysis with respect to the trade dress non-infringement claim. "A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo!*, 433 F.3d at 1208 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)); *see also Elecs.*

8

### 2. Personal Jurisdiction for Design Patent Non-infringement

Whether personal jurisdiction exists over Rhino with respect to the design patent non-infringement cause of action is governed by Federal Circuit precedent. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002) ("Federal Circuit law governs the issue of personal jurisdiction in patent-related cases."); *Red Wing*, 148 F.3d at 1358 ("This court applies the law of the Federal Circuit, rather than that of the regional circuits, to determine personal jurisdiction in a patent infringement case.").

In the context of a declaratory judgment action seeking a declaration of patent non-infringement, the crux of the inquiry regarding specific jurisdiction is whether the patentee has engaged in activities that relate to the enforcement or the defense of the validity of the relevant patent in the forum. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334–36 (Fed. Cir. 2008). In other words, a patentee's "mere acts of making, using, offering to sell, selling, or importing products . . . do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability." *Id.* at 1336. Such activities will not support a claim of specific jurisdiction over a defendant patentee. *Id.* Rather, only activities that "relate in some material way to the enforcement or the defense of the patent" will suffice to support specific jurisdiction. *Id.* Examples include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.* at 1334–35.

Here, SGS contends that "Rhino's cease and desist letter amounts to a purposeful effort to enforce the patents-in-suit in California that is sufficient to establish the minimum contacts required for specific jurisdiction." (Doc. No. 12 at 18.) This position, however, is squarely contradicted by Federal Circuit decisions, which holds that a cease and desist letter on its own does not constitute minimum contacts comporting with fair play and substantial justice. *See New*

---

*For Imaging, Inc. v. RAH Color Techs. LLC*, No. 18-cv-01612-WHO, 2018 WL 5304838, at *7 (N.D. Cal. Oct. 24, 2018) ("[I]t is questionable whether a good-faith assertion of infringement is the type of intentional act that triggers the consideration of the 'effects' test in *Calder*. . .. There are no allegations here that [defendant] engaged in any tortious conduct.").

9

*World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037–38 (Fed. Cir. 2017) ("[T]his court has held that it is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more."); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) (noting that under Federal Circuit law, "a patent owner may, without more, send cease and desist letters to a suspected infringer . . . without being subjected to personal jurisdiction in the suspected infringer's home state"); *Red Wing*, 148 F.3d at 1360–61 ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.").

Consideration of the decisions in *Electronics for Imaging, Inc. v. RAH Color Technologies LLC* and *Xilinx Inc. v. Papst Licensing GmbH & Co. KG*, cited by SGS in its opposition to the pending motion (*see* Doc. No. 12 at 18), only reinforce the court's lack of jurisdiction here. In *Electronics for Imaging*, there was "no dispute that [defendant] did not send a cease-and-desist letter or otherwise contact or meet with [plaintiff]." No. 18-cv-01612-WHO, 2018 WL 5304838, at *7 (N.D. Cal. Oct. 24, 2018). Instead, the plaintiff in *Electronics for Imaging* sought to base jurisdiction on "dozens of cease and desist letters" sent to California companies *other than* the defendant. *Id.* The court held that, even "[a]ssuming that those cease-and-desist letters asserted infringement of the same patents at issue in this case, they do not demonstrate jurisdiction absent evidence that in connection with its patent enforcement efforts [defendant] took affirmative steps to do business in California or benefit from the protections of California law." *Id.* The court then analyzed the other purported contacts with the forum, and concluded that jurisdiction was lacking because there was no evidence that the defendant had voluntarily undertaken significant patent enforcement action in the forum, such as litigation, ongoing supervision of licensees, or entering into exclusive licenses within California. *Id.* at *5–6.

In contrast, the court in *Xilinx* found that the exercise of jurisdiction would not be unreasonable where the patent holder not only sent numerous cease-and-desist letters, but also had "repeatedly availed itself of the California federal court system—at least seven times—by filing patent infringement lawsuits here." 848 F.3d 1346, 1350, 1357 (Fed. Cir. 2017). There,

representatives of the patent holder had also traveled to the forum to discuss the infringement and licensing offer with the plaintiff. *Id.* These facts make *Xilinx* readily distinguishable from the present case, where SGS alleges no other enforcement contacts apart from Rhino's cease and desist letter, and otherwise provides no reason that this court should depart from clear Federal Circuit authority holding that a cease and desist letter, without more, is insufficient to confer specific personal jurisdiction over a defendant patentee.

In sum, the court has concluded that it lacks specific personal jurisdiction over the defendant for both the trade dress and design patent non-infringement causes of action.

**B.     Motion to Transfer**

Pursuant to 28 U.S.C. § 1631, if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed[.]" *See Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (holding that district court's failure to exercise its discretion under § 1631 constitutes an abuse of discretion); *see also Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 761–62 (9th Cir. 1990) (finding a lack of personal jurisdiction and remanding with instruction that the district court dismiss or transfer the action pursuant to § 1631).

Having found above that this court lacks personal jurisdiction over the defendant, the sole issue under 28 U.S.C. § 1631 is whether transfer would be in the interest of justice. Generally, "transfer will be in the interest of justice because normally dismissal of an action that could have been brought elsewhere is 'time-consuming and justice-defeating.'" *Miller*, 905 F.2d at 262 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)) (citation omitted).

Although not framed in the context of an "interest of justice" analysis, Rhino's alternative motion to transfer provides considerations relevant to the court's interest of justice analysis under § 1631. Rhino argues that, pursuant to the anticipatory suit rule, this declaratory judgment action should be dismissed without prejudice or transferred to the District of Idaho where it can be consolidated with Rhino's pending action in that court. (Doc. No. 9-1 at 11–13.) SGS objects to transfer on the ground that there is no factual basis for application of the anticipatory suit rule as opposed to the first-to-file rule. (Doc. No. 12 at 19–23.)

11

The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). Accordingly, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

The Ninth Circuit has recognized, however, that the first-to-file rule should not be applied mechanically, and that exceptions to that rule include bad faith, anticipatory suits, or forum shopping. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). A suit is anticipatory when the plaintiff in the first action was in receipt of "specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003).

Here, it is appropriate to depart from the first-to-file rule because the instant action appears to be an anticipatory suit. In its opposition to the motion now pending before this court, SGS disputes Rhino's characterization of events, insisting that "there never were any settlement negotiations between Rhino and Sturdy Safe's *current* counsel." (Doc. No. 12 at 22) (emphasis added). SGS fails to acknowledge the settlement discussions undertaken by its former counsel. SGS also attempts to liken this action to *Tuxton China, Inc. v. Oneida Group Inc.*, No. 2:17-cv-02996-SVW-E, 2017 WL 5989040, (C.D. Cal. Sept. 12, 2017), where the court declined to invoke the anticipatory suit doctrine. In *Tuxton China*, however, the court noted that the defendant's pre-suit letter to plaintiff did not threaten imminent suit, but simply stated that it would "take more formal actions" if the plaintiff did not meet the defendant's demands. *Tuxton China*, 2017 WL 5989040, at *2.

SGS's analogy to *Tuxton China* is unpersuasive, because here, Rhino's cease and desist letter specifically informed SGS that if it did not receive a satisfactory reply to its demands, it "[would] be forced to pursue our client's claims in federal court." (Doc. No. 2 at 12.) In an email dated September 19, 2018 from Rhino's counsel to SGS's Texas-based counsel, Rhino's counsel

transmitted a draft compromise agreement, but stated that if the agreement did not lead to an acceptable resolution, "we will be forced to proceed as indicated in our prior correspondence." (Doc. No. 9-6.) In addition, in an October 4, 2018 email from Rhino's counsel to SGS's Texas-based counsel, Rhino's counsel noted that the "parties may be at an impasse" and made "*one final attempt* at resolving the matter" out of court. (Doc. No. 9-7) (emphasis added). SGS therefore had "concrete, specific indications" before it initiated the instant action that Rhino would immediately file suit upon the collapse of settlement negotiations. *Z-Line Designs*, 218 F.R.D. at 665.

SGS's other arguments against application of the anticipatory suit rule here—that it served Rhino promptly in this action, and that Rhino's Idaho Action is retaliatory and "highlights Rhino for the bully that it is"—are also unpersuasive. (*See* Doc. No. 12 at 22–23.) SGS does not cite any authority for the proposition that prompt service of process is sufficient to overcome the other indications that SGS engaged in misdirection, including when its Tennessee-based counsel stated that he would "be in touch" regarding the latest settlement offer, but then instead filed suit against Rhino without any notice or further communication. (*See* Doc. No. 9-1 at 8; Doc. No. 9-8.) Moreover, SGS's assertion that the Idaho Action is retaliatory or bullyish is belied by the record, which indicates that Rhino made clear on multiple occasions that it intended to file suit in federal court if an out-of-court resolution could not be reached.

Finally, policy considerations counsel against application of the first-to-file rule here. Numerous courts have held that "where . . . a declaratory judgment action has been triggered by a cease and desist letter that both seeks settlement and notifies the party of the possibility of litigation upon collapse of negotiations, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first." *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) (quoting *Z-Line*, 218 F.R.D. at 667) (quotation marks omitted); *see also Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) ("The anticipatory suit exception is rooted in a concern that a plaintiff should not be deprived of its traditional choice of forum because a defendant with notice of an impending suit first files a declaratory relief action over the same issue in another forum.") (citation and quotation marks

omitted); *Charles Schwab & Co. v. Duffy*, No. C98-03612 MMC, 1998 WL 879659, at *1 (N.D. Cal. Dec. 8, 1998) ("Applying the first-to-file rule would thwart settlement negotiations, as intellectual property holders would feel compelled to file suit rather than communicate with an alleged infringer."); *DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776, 778 (N.D. Cal. 1993) ("The Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse.") (citation omitted); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354 (S.D.N.Y. 1992) ("Potential plaintiffs should be encouraged to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before the plaintiff files a complaint.") (citation and quotation marks omitted).

Based on the record described above, and the prior settlement discussions between the parties, the court finds that the filing of SGS's complaint in this court was anticipatory and a method of forum shopping. For the sake of judicial economy and efficiency, and in the interest of justice, the court will transfer this declaratory judgment action to the United States District Court for the District of Idaho. In light of the court's granting of Rhino's motion to transfer on this basis, the court declines to address Rhino's alternative argument that transfer of this action is warranted pursuant to 28 U.S.C. § 1404(a).

**CONCLUSION**

For the reasons stated above:

1. Defendant's motion to dismiss or transfer (Doc. No. 9) is granted;
2. This court lacks personal jurisdiction over defendant; and
3. The Clerk of the Court is directed to transfer this case to the United States District Court for the District of Idaho.

IT IS SO ORDERED.

Dated: **February 14, 2019**

UNITED STATES DISTRICT JUDGE